UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JESSICA KAYLL,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>    Defendants. | Civil Action No. 22-2830 (JDB) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**INTRODUCTION AND BACKGROUND** ................................................................................... 1

**ARGUMENT** ............................................................................................................................... 3

    I.    Memorandum of Agreement ................................................................................. 3

    II.    The State Department Controls the Record, Not CBP, and Caselaw Supports Defendants' Position ............................................................................................. 3

        A.    *Burka* and its Progeny ............................................................................... 3

        B.    Legal Authority Supporting Exemption 3 and 8 U.S.C. § 1202(f) Under the Circumstances ................................................................................... 9

    III.    Plaintiff Seeks a Record Pertaining to a Visa Decision ...................................... 11

**CONCLUSION** ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**CASES**

*Airaj v. United States*,
Civ. A. No. 15-0983 (ESH), 2016 WL 1698260 (D.D.C. Apr. 27, 2016) .................................. 11

*Assadi v. U.S. Citizenship & Immigr. Servs.*,
Civ. A. No. 12-1374, 2015 WL 1500254 (S.D.N.Y. Mar. 31, 2015) ............................................ 9

*Burka v. Dep't of Health & Hum. Servs.*,
87 F.3d 508 (D.C. Cir. 1996) ........................................................................................................ 7

*Canning v. Dep't of Just.*,
Civ. A. No. 11-1295 (GK), 2017 WL 2438765 (D.D.C. June 5, 2017) ......................................... 9

*Cause of Action Inst. v. Off. of Mgmt. & Budget*,
10 F.4th 849 (D.C. Cir. 2021) ............................................................................................. 4, 5, 7

*Cooper v. Dep't of Just.*,
Civ. A. No. 99-2513 (RBW), 2022 WL 602532 (D.D.C. Mar. 1, 2022) ....................................... 9

*Energy Pol'y Advocs. v. Dep't of Interior*,
Civ. A. No. 21-1411 (JDB), 2023 WL 2585761 (D.D.C. Mar. 21, 2023) ..................................... 2

*Jimenez v. Dep't of Homeland Sec.*,
Civ. A. No. 19-21546, 2022 WL 1642460 (S.D. Fla. Feb. 24, 2022) ........................................... 9

*Judicial Watch, Inc. v. Federal Housing Finance Agency*,
646 F.3d 924 (D.C. Cir. 2011) .................................................................................................. 6, 7

*Medina-Hincapie v. Dep't of State*,
700 F.2d 737 (D.C. Cir. 1983) ............................................................................................ 1, 2, 11

*Nat'l Archives & Recs. Admin. v. Favish*,
541 U.S. 157 (2004) .................................................................................................................... 13

*Rominov Inv. Servs. Inc. v. Dep't of Homeland Sec.*,
Civ. A. No. 19-0427, 2020 WL 4289426 (M.D. Fla. July 2, 2020) ............................................ 10

*Spadaro v. CBP*,
978 F.3d 34 (2d Cir. 2020) ........................................................................................................... 9

*Vizcarra Calderon v. Dep't of Homeland Sec.*,
Civ. A. No. 18-0764 (CRC), 2020 WL 805212 (D.D.C. Feb. 18, 2020) .................................... 11

**STATUTES**

5 U.S.C. § 552 ................................................................................................................................ 1

8 U.S.C. § 1182 .................................................................................................................... 4

8 U.S.C. § 1202 ............................................................................................................. passim

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................. 1

**OTHER**

9 Foreign Affairs Manual 603 ....................................................................................... 10, 11

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, the U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP" or "Agency") (collectively "Defendants") reply in support of their motion for summary judgment, ECF No. 16, and oppose Jessica Kayll's ("Plaintiff's") cross motion for summary judgment, ECF No. 19, for her claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## INTRODUCTION AND BACKGROUND

Unhappy with the law, and accordingly, Defendants' response to her request, Plaintiff complains that CBP and the State Department have "colluded" to avoid their obligations under FOIA. *See* Pl.'s Mem. at 14, ECF No. 20. "The agencies' behavior," she asserts, "is a blatant attempt to sidestep their FOIA obligations and extend a carefully crafted exemption far beyond its plain meaning." *Id.* at 10. Such a position, she continues, is "a clever workaround . . . lacking legal foundation." *Id.* at 8. Plaintiff's rhetoric and speculation are both unwarranted and unpersuasive.[1]

While Plaintiff may be upset with the Agency's response because, as she states, she "fully intend[s] to seek to return to the United States" and "[o]btaining documents through FOIA is critical to preparing any future requests," *see* Kayll Decl. ¶ 7, ECF No. 18-3, the law is clear: information pertaining to a visa decision is exempt under FOIA, *see Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 744 (D.C. Cir. 1983). And while it may be frustrating that CBP does not have the record she now seeks—the State Department does— "Courts—including the Supreme Court—have frequently held that documents that arguably *could be* captured and stored, but were not, are not 'agency records' for FOIA purposes." *Energy Pol'y Advocs. v. Dep't of Interior*, Civ. A.

---

[1] Plaintiff's brief contains additional unfounded accusations against Defendants. For example, Plaintiff accuses Defendants of "gaslighting" and playing "games with FOIA law." *See* Pl.'s Mem. at 14, 24. Defendants will not dignify such baseless accusations with a response.

No. 21-1411 (JDB), 2023 WL 2585761, at *4 (D.D.C. Mar. 21, 2023) (emphasis in original). Plaintiff alleges a conspiracy here, but no such conspiracy exists.

Plaintiff wants the Court to believe that this case is not about a visa, yet the first sentence of her request reads, "We are requesting any and all information and documents pertaining to Ms. Jessica Kayll's admissibility and the revocation of her F-1 visa." *See* ECF No. 16-1 ¶ 1. She tries to create distance between the record at issue here and the visa decision, knowing that it is fatal to her case, but her attempts at creating distance lack merit. For example, she claims that she may seek entry into the United States in the future through other means not requiring a visa, such as through parole, *see* Kayll Decl. ¶ 7, ECF No. 18-3, but there is no evidence in the record that Plaintiff presently or ever will experience an urgent humanitarian need, or provide a significant public benefit, such that she may be eligible for parole. *See generally* https://www.uscis.gov/humanitarian/humanitarian_parole ("Parole is not intended to be used solely to avoid normal visa processing procedures and timelines[.]"). Regardless, what may or may not happen in the future is not before the Court.

Ultimately, Plaintiff does not—in fact, cannot—deny that the record at issue here pertained to a visa decision. *See* Pl.'s Mem. at 9 ("And while the record in question was generated as part of a visa adjudication here"), at 10 ("The fact that this waiver decision was associated with a visa decision"), at 22 ("Certainly, the [CBP Admissibility Review Office] records here were generated because of a waiver sought by Plaintiff through a consulate that was contemplating granting her a visa."). And it is settled law that a record pertaining to a visa decision is exempt under FOIA. *Medina-Hincapie*, 700 F.2d at 744.

Thus, the main issue before the Court is whether the nonimmigrant visa waiver at issue in this case is a CBP record. For the reasons in Defendants' opening brief and supporting

documentation, and expanded on in this reply, the nonimmigrant visa waiver in this case is not a CBP record; it is a record of the State Department, which is not a party to this lawsuit or a recipient of Plaintiff's request. Thus, the Court should grant Defendants' motion for summary judgment.

## ARGUMENT

I. **Memorandum of Agreement**

It appears Defendants' efforts to be concise and direct have been interpreted by Plaintiff as a conspiracy theory. Defendants have disclosed the relevant portions of the memorandum of agreement, which is not subject to the FOIA request. Should the Court seek to review the remainder of the agreement, Defendants can provide a copy for the Court to review ex parte, in camera.

II. **The State Department Controls the Record, Not CBP, and Caselaw Supports Defendants' Position**

A. *Burka* **and its Progeny**

As stated in Defendants' opening brief, the record at issue here is not a CBP record; it is a State Department record. The State Department created the record in the system that it controls and maintains, the Consular Consolidated Database, Admissibility Review Information System. Upon referral from the State Department, CBP provides its input in a few fields to communicate CBP's decision on the waiver recommendation in the record that State created and controls.[2] Without the referral from the State Department, CBP would not have input the information in the record. CBP input the information in the State Department record for the State Department to adjudicate a visa application. The underlying waiver determination was made by CBP, but that waiver determination is in place solely to assist the State Department with its visa adjudication

---

[2]   Plaintiff states in her brief that "Defendants apparently concede . . . that CBP created the record (or records) in question here." To be completely clear, CBP did not create the record. The State Department created the record, and CBP contributed to it with input in a few fields. *See* Rasinski Suppl. Decl. ¶ 5, ECF No. 22-1.

3

process. *See* 8 U.S.C. § 1182(d)(3)(A) (Attorney General has discretion to grant a nonimmigrant visa to an applicant who is otherwise ineligible). CBP did not maintain a copy of the record in any of its own databases, and refers users of its TECS system to the Consular Consolidated Database record. CBP cannot alter or destroy a record that it does not keep in any of its databases.[3] CBP must obtain State Department consent "before disclosing, reproducing, transmitting, or copying for disclosure a visa record . . . or any portion of information from a visa record . . . , adjudications, and statistics to parties outside [the Department of Homeland Security] including, but not limited to, third parties, other U.S. Government Agencies/Offices, requests from Congress, the Government Accountability Office, courts, and FOIA." Rasinski Decl. ¶ 10, ECF No. 16-2; *see also* Stein Decl. ¶ 5, ECF No. 16-3. Under the totality of the circumstances, the record at issue here is not a CBP record; it is a State Department record.

Plaintiff states in her brief that "the government hardly situates its arguments in relevant caselaw at all." Pl.'s Mem. at 21. She continues that the main case that the government relies on— *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849 (D.C. Cir. 2021)—is "a far cry from a document that an agency affirmatively *creates* pursuant to a statutory duty and to which the agency retains ongoing access in furtherance of future duties." *Id.* (emphasis in original). Plaintiff has not read *Cause of Action* closely enough.

*Cause of Action* expressly rejects the arguments Plaintiff advances. Plaintiff's entire theory about why CBP controls the record at issue here is based on presumptions and speculation about what a hypothetical CBP employee may or may not do in the future. She presumes, for example, that CBP will use the document at some time in the future. *See, e.g.*, Pl.'s Mot. at 17 ("CBP and

---

[3]     Plaintiff also questioned in her brief whether CBP could alter or delete an entry in the Consular Consolidated Database. *See* Pl.'s Mem. at 19. Defendants clarify that CBP does not have the ability to modify, change, or delete records in the Database. *See* Rasinski Suppl. Decl. ¶ 6.

4

its personnel obviously intend to make use of CBP's analysis *going forward* when Plaintiff crosses paths with the agency again." (emphasis in original)), at 19 ("And it clearly *does* intend to rely on them further[.]" (emphasis in original)). She argues that CBP's ability to "access" the document at issue here suggests that the Agency controls it. *See* Pl.'s Mot. at 18 ("And indeed, CBP's ongoing access is not merely theoretical[.]").

> The following passage from *Cause of Action* expressly refutes Plaintiff's position:
>
> Cause of Action argues briefly that the agencies "implied" they read these browsing histories, but its only basis for that claim is that other agency employees could have had access to the browsing histories. This assertion conflates two different inquiries—whether the agency has the ability to use a document and whether it actually used the document. The possibility of access is not equivalent to use by the agency. Moreover, this kind of speculation about who might have accessed the browsing histories does not defeat summary judgment.

*Cause of Action Inst.*, 10 F.4th at 857; *see also id.* at 856 ("Mere authority to control, however, is not enough. The relevant consideration is how much control the agencies actually asserted over the documents at issue.").

Here, there is no genuine dispute that while CBP may have "access" to a prior decision through the State Department's Consular Consolidated Database, whether a CBP employee will use that decision later, and for what purpose, is unknown and amounts to pure speculation. *See id.* at 857. Plaintiff assumes that a CBP employee will go into the State Department's Consular Consolidated Database in the future to see the prior decision, but an unsupported assumption "does not defeat summary judgment." *Id.* Indeed, Plaintiff offers nothing to suggest that a future CBP officer would or would not consult the Consular Consolidated Database were Plaintiff to attempt to reenter the United States. A future CBP officer could be satisfied with other records available to CBP and decide there is no need to search the Consular Consolidated Database. "CBP Adjudicators may review all current and relevant information submitted in support of the request, as well as conduct standard record queries within CBP systems, such as TECS." *See* Rasinski

5

Suppl. Decl. ¶ 7. And while "CBP adjudicators may also review prior approvals or denials within CCD to obtain a full application picture," ultimately, "the application would be reviewed on its own merit." *Id.*

The parties can go back and forth and continue to speculate about what may or may not happen in the future or how the record at issue might be used. What cannot be disputed, however, is that CBP neither maintains nor controls the record that resides in the Consular Consolidated Database. The record is within the control of the State Department. CBP, upon referral by the State Department, accesses the Consular Consolidated database to input its findings and recommendations regarding the waiver. *See* Rasinski Suppl. Decl. ¶ 6. CBP does not retain a copy of the Consular Consolidated Database record in any of its systems. It is not a CBP record; it is a State Department record.

*Judicial Watch, Inc. v. Federal Housing Finance Agency*, 646 F.3d 924 (D.C. Cir. 2011), provides further support for Defendants' position. There, the plaintiff sought records from the Federal Housing Finance Agency, as temporary conservator of Fannie Mae and Freddie Mac, seeking disclosure of Fannie Mae and Freddie Mac records concerning their political campaign contributions. *Id.* at 925. Interestingly, the Agency acknowledged that it had access to the records sought but denied reading them. *Id.* at 926. On appeal, the D.C. Circuit found that the first two *Burka* factors weighed against the Agency because it had the ability to use the documents in the future as it saw fit. *Id.* at 926-28. But the third factor alone—the decisive one—favored the Agency; thus, the records sought were not agency records within the meaning of FOIA:

> Although there is no doubt that the FHFA could consult the requested records as it conducts its business, the problem for Judicial Watch is that no one from the FHFA has done so. The Supreme Court held in *Forsham v. Harris* that documents an agency had the right to acquire would not become agency records subject to FOIA "unless and until the right is exercised." 445 U.S. 169, 181 (1980). In the same way,

6

      the FHFA's unexercised right to use and dispose of the records requested in this case is not enough to subject those records to FOIA.

*Jud. Watch*, 646 F.3d at 928; *see also Cause of Action Inst.*, 10 F.4th at 857 ("Actual use is often 'the decisive factor' when determining whether a requested document is an agency record.").

      Here, like in *Judicial Watch*, while CBP may "access" or "consult" the Consular Consolidated Database to examine the record, there is no evidence that anyone actually has done so, particularly given that the CBP Admissibility Review Office has not received a subsequent waiver referral from the State Department. *See* Rasinski Suppl. Decl. ¶ 8 ("CBP ARO has not received any subsequent waiver referral from DOS for the plaintiff."); *see also Jud. Watch, Inc.*, 646 F.3d at 928 (even if agency may access record, if agency has not actually done so, record is not subject to FOIA request directed to that agency). Here, the record has been read and relied on by the State Department to adjudicate a visa. Under the rationale of *Judicial Watch*, the record at issue here is not a CBP record; it is a State Department record.

      Plaintiff wrongly contends that *Burka* itself counsels against Defendants' position. In *Burka*, the D.C. Circuit found that the National Cancer Institute, a division of the National Institutes of Health, controlled the records requested because it ordered a contractor to create the materials, planned to take physical possession of the tapes at the conclusion of the project, indicated that it would disclose the information after its publication schedule was completed, prohibited the contractor from making any independent disclosures, and read and relied significantly on the information in writing articles and developing agency policies. *Burka v. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996). Even though the contractor possessed the records, the D.C. Circuit found that the Agency controlled them.

      Here, after inquiry by the State Department, CBP merely populated some fields in the State Department's Consular Consolidated Database, which information the State Department then

7

combined with its own information to create the at-issue record. Like in *Burka*, where the contractor was prohibited from making any independent disclosures, under the Memorandum of Agreement, CBP must obtain consent from the State Department "before disclosing, reproducing, transmitting, or copying for disclosure a visa record . . . or any portion of information from a visa record . . . , adjudications, and statistics to parties outside [the Department of Homeland Security] including, but not limited to, third parties, other U.S. Government Agencies/Offices, requests from Congress, the Government Accountability Office, courts, and FOIA." Rasinski Decl. ¶ 10; *see also* Stein Decl. ¶ 5. And, while CBP has not relied on the record at issue, the State Department most certainly has done so in adjudicating the visa application. The State Department's role is like how the National Cancer Institute in *Burka* read and relied significantly on the information when writing articles and developing agency policies. In contrast to *Burka*, where a contractor possessed the records, here CBP does not, and instead CBP only maintains its TECS record, which simply notes whether a waiver was granted or denied. Rasinski Decl. ¶ 13-14. The TECS record directs its user to the Consular Consolidated Database for any more information. *Id.* at 13. Thus, under *Burka*, the record at issue is not a CBP record; it is a State Department record.[4]

---

[4] Plaintiff cites a few more cases to support her position, but they are inapposite. For example, *Ibrahim v. Department of State*, 311 F. Supp. 3d 134, 139-41 (D.D.C. 2018), examined whether a "resettlement application" was akin to a "permit" within the meaning of 8 U.S.C. § 1202(f) and found that it was not. The opinion did not examine who controlled the application. Here, Plaintiff cannot dispute, although she tries, that the nonimmigrant visa waiver at issue pertained to a visa adjudication within the meaning of 8 U.S.C. § 1202(f).

*Cause of Action v. National Archives & Records Administration*, 753 F.3d 210, 215-16 (D.C. Cir. 2014), involved the National Archives and Records Administration, which is a unique agency. "The Archives does not use documents created in the three branches in any operational way, or indeed in any way comparable to any other federal agency." *Id.* at 216. "It may control them in a sense, but its control consists in cataloguing, storing, and preserving, not unlike a 'warehouse.'" *Id.* Here, the State Department did not act like a "warehouse" for CBP. The record was created for the State Department for its own use in adjudicating a visa application.

8

### B. Legal Authority Supporting Exemption 3 and 8 U.S.C. § 1202(f) Under the Circumstances

Plaintiff states in her brief: "There is no legal authority to support the government's position that the State Department's FOIA exemption applies." Pl.'s Mem. at 22. Defendants disagree. In addition to the caselaw discussed above, the following cases further support Defendants' position, even if the opinions do not expressly discuss the issue of who controls the records.

Numerous courts, both in this District and elsewhere, have found that when one agency referred a record to the State Department, and the State Department subsequently determined that the record was exempt under Exemption 3 and 8 U.S.C. § 1202(f), the government appropriately withheld the document. *See, e.g.*, *Spadaro v. CBP*, 978 F.3d 34, 43-44 (2d Cir. 2020) (concluding that five of eight documents sent from FBI to the State Department for consultations were properly withheld under Exemption 3 and 8 U.S.C. § 1202(f)); *Cooper v. Dep't of Just.*, Civ. A. No. 99-2513 (RBW), 2022 WL 602532, at *27 (D.D.C. Mar. 1, 2022) (finding a document in the TECS records of the legacy U.S. Customs Service (now CBP), which was referred to the State Department, was properly withheld under Exemption 3 and 8 U.S.C. § 1202(f)); *Canning v. Dep't of Just.*, Civ. A. No. 11-1295 (GK), 2017 WL 2438765, at *7 (D.D.C. June 5, 2017) (finding request to FBI, which was referred to State Department for consultation, properly withheld under Exemption 3 and 8 U.S.C. § 1202(f)); *Jimenez v. Dep't of Homeland Sec.*, Civ. A. No. 19-21546, 2022 WL 1642460, at *7-8 (S.D. Fla. Feb. 24, 2022), *R. & R. adopted*, 2022 WL 16700354 (S.D. Fla. Nov. 3, 2022) (finding records in possession of Office of Biometric Identity Management, a component of DHS, properly withheld under Exemption 3 and 8 U.S.C. § 1202(f)); *Assadi v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 12-1374, 2015 WL 1500254, at *10-11 (S.D.N.Y. Mar. 31, 2015) (finding emails sent between immigration agencies and a "draft review

9

memorandum . . . intended to accompany a specific visa petition being sent to posts to advise of certain concerns about a class of visa applicants" were properly withheld under Exemption 3 and 8 U.S.C. § 1202(f)).

One court even found that a nonimmigrant visa application in the possession of U.S. Citizenship and Immigration Services was exempt from disclosure under Exemption 3 and 8 U.S.C. § 1202(f) even though the plaintiffs had possessed a copy of it at one time. *See Rominov Inv. Servs. Inc. v. Dep't of Homeland Sec.*, Civ. A. No. 19-0427, 2020 WL 4289426, at *6 (M.D. Fla. July 2, 2020), *R. & R. adopted*, 2020 WL 4287354 (M.D. Fla. July 27, 2020); *see also* 9 Foreign Affairs Manual 603.1-2(b)(1) (defining a visa record as, among other things, any document "presented by an applicant in connection with a visa application and retained . . . at the conclusion of a visa interview."), https://fam.state.gov/fam/09FAM/09FAM060301.html.

Here, it is undisputed that CBP referred Plaintiff to the State Department once it determined the record that Plaintiff sought was under the purview of the State Department. *See* ECF No. 22-2; *see also* 9 Foreign Affairs Manual 603.1-2(b)(2) (also defining a visa record as, among other things, "[a]ny item, which may have a bearing on the applicant's visa application, submitted to the visa section by the applicant, *by other agencies*, or by the Department, such as an AO[.]" (emphasis added)), https://fam.state.gov/fam/09FAM/09FAM060301.html. In accordance with all the case law cited above about whether an agency controls a document under FOIA, and all the case law where one agency has referred a record to the State Department, which subsequently determined that the record was exempt under Exemption 3 and 8 U.S.C. § 1202(f), and which withholding was subsequently judicially upheld, there plainly is "legal authority to support the government's position that the State Department's FOIA exemption applies." Pl.'s Mem. at 22.

10

**III.     Plaintiff Seeks a Record Pertaining to a Visa Decision**

Recognizing that records pertaining to a visa decision are exempt from disclosure under Exemption 3 and 8 U.S.C. § 1202(f), Plaintiff lastly attempts to create distance between the record at issue here and the visa decision. She argues that she "does not seek a visa record—she seeks an inadmissibility ruling by CBP," even though the record undoubtedly pertained to a visa decision.[5] The law in this Circuit does not support Plaintiff's position:

> The statute's plain language is not limited to actual visa applications; it applies to any information that "pertain[s] to the issuance or refusals of visas." The phrase "pertaining to" "discourages . . . a strict interpretation of Section 222(f)." And information compiled for the purpose of informing visa decisions appears to easily fall within that scope, even if it is compiled for use on a future application.

*Vizcarra Calderon v. Dep't of Homeland Sec.*, Civ. A. No. 18-0764 (CRC), 2020 WL 805212, at *2 n.4 (D.D.C. Feb. 18, 2020) (quoting *Airaj v. United States*, Civ. A. No. 15-0983 (ESH), 2016 WL 1698260, at *8 (D.D.C. Apr. 27, 2016) ("The plain language of the statute, which encompasses records 'pertaining' to the issuance or refusal of visas, discourages such a strict interpretation of Section 222(f).")); *Medina-Hincapie*, 700 F.2d at 743-44 (recognizing that the scope of 8 U.S.C. § 1202(f) is not limited to information provided by the visa applicant, but "includes information revealing the thought-processes of those who rule on the application").

Thus, the Court need not engage in the semantics that Plaintiff encourages, i.e., whether the record at issue is a "visa record" or a "record pertaining to a visa decision." *See supra* at 10 (noting that 9 Foreign Affairs Manual 603.1-2(b)(2) defined visa record as "[a]ny item, which may

---

[5]     Notably, Plaintiff's FOIA request characterized the record as a "denial of her nonimmigrant visa waiver." *See* ECF No. 16-1 ¶ 1. Now, in light of Defendants' briefing, she seeks to recharacterize it as an "inadmissibility ruling," removing the word "visa" from her characterizations. Plaintiff's backtracking is a notable indicator that even she recognizes this case is all about visas. In any event, "the agency (and the Court) reads the request[] as drafted, not as the [Plaintiff] might wish [it] were drafted." *Ctr. for Immigr. Studies v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 274 (D.D.C. 2022) (cleaned up).

have a bearing on the applicant's visa application, submitted to the visa section by the applicant, by other agencies, or by the Department, such as an AO"). Plaintiff admits, as she must, that the record at issue here pertained to a visa decision. *See* Pl.'s Mem. at 9 ("And while the record in question was generated as part of a visa adjudication here"), at 10 ("The fact that this waiver decision was associated with a visa decision"), at 22 ("Certainly, the ARO records here were generated because of a waiver sought by Plaintiff through a consulate that was contemplating granting her a visa."). She declares that she plans to try to seek a visa in the future again. *See* Kayll Decl. ¶ 7. Indeed, the first sentence of her request reads: "We are requesting any and all information and documents pertaining to Ms. Jessica Kayll's admissibility and the revocation of her F-1 visa." Put simply, this case and the underlying FOIA request are all about visas.

\* \* \*

## CONCLUSION

"Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 175 (2004) (upholding record withholding under FOIA, where plaintiff had not "produced any evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred"). Plaintiff fails to make any such showing to support her bald conspiracy allegations. Defendants acted in accordance with the law. Thus, for the foregoing reasons, as well as those in Defendants' opening brief and supporting materials, the Court should grant Defendants' motion for summary judgment.

Date:  September 12, 2023
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  */s/ Sam Escher*
     SAM ESCHER, D.C. Bar #1655538
     Assistant United States Attorney
     601 D Street, N.W.
     Washington, D.C. 20530
     (202) 252-2531
     Sam.Escher@usdoj.gov

*Attorneys for the United States of America*