UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JESSICA KAYLL,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. CUSTOMS & BORDER PROTECTION,<br><br>　　　Defendants. | Civil Action No. 22-2830 (JDB) |

## MEMORANDUM OPINION

Plaintiff Jessica Kayll brings this action under the Freedom of Information Act ("FOIA") to compel production of records relating to U.S. Customs and Border Protection's ("CBP") determination that she is "inadmissible" to enter the United States. Kayll's suit alleges that CBP and its parent agency the Department of Homeland Security ("DHS") have unlawfully withheld agency records. Before the Court are the parties' cross-motions for summary judgment.[1] For the reasons explained below, the Court will grant defendants' motion, deny Kayll's motion, and enter judgment for defendants.

## Background

Kayll is a citizen of the United Kingdom who formerly held a F-1 student visa to study at the Pratt Institute in Manhattan, New York. See Decl. of Jessica Kayll [ECF No. 19-3] ("Kayll Decl.") ¶¶ 2–3. When she attempted to reenter the United States following a brief trip home to visit family in February 2022, she was interrogated by CBP officers who deemed her inadmissible and canceled her student visa. Id. ¶ 3.

---

[1] The Court refers primarily to CBP as the defendant.

1

A foreign national deemed "inadmissible" by government officials generally may not enter the United States. 8 U.S.C. § 1182(a). Grounds for inadmissibility include criminal activity, national security concerns, or prior unlawful presence, among others. See id. As relevant here, certain grounds for inadmissibility can be waived by CBP, upon the recommendation of a consular officer or the Secretary of State. Id. § 1182(d)(3). A CBP waiver clears a hurdle in the applicant's path to obtaining a visa (or other immigration-related relief). See 22 C.F.R. § 40.301 (regulations describing process); 9 FAM 305.4 (State Department policy manual describing the same).

In April 2022, Kayll applied for a new F-1 student visa. See Kayll Decl. ¶ 4. After an interview, the consular officer at the U.S. embassy requested an inadmissibility waiver from CBP. Id. ¶ 4; Decl. of Laura R. Stein [ECF No. 16-3] ("Stein Decl.") ¶ 8. CBP's Admissibility Review Office denied the request. Stein Decl. ¶ 8. In advance of preparing a new application to enter the United States, Kayll sought information about why CBP denied the waiver. See Kayll Decl. ¶ 7. On May 20, 2022, Kayll's counsel filed the following FOIA request with CBP:

> We are requesting any and all information and documents pertaining to Ms. Jessica Kayll's admissibility and the revocation of her F-1 visa. We are also requesting information regarding the April 2022 denial of her nonimmigrant visa waiver by the Admissibility Review Office. Please provide any and all (1) information contained in TECS and/or other databases relating to Ms. Jessica Kayll; and (2) related communications between CBP and/or US Department of State and/or Immigration and Customs Enforcement.

Defs.' Statement of Material Facts Not in Genuine Dispute [ECF No. 16-1] ("Defs.' Statement of Material Facts") ¶ 1.

CBP acknowledged the request on June 7, 2022, but did not produce any documents until plaintiff filed this suit. Id. ¶¶ 2–8; see Pl.'s Statement of Undisputed Material Facts [ECF No. 19-1] ¶ 8. Kayll alleges in her lawsuit that the agencies failed to timely respond to her request and unlawfully withheld agency records under FOIA. Compl. [ECF No. 1] ¶¶ 20–27. CBP subsequently made two productions totaling 31 pages of records in fall 2022. Defs.' Statement of

Material Facts ¶¶ 6–7.  After a supplemental search with the Admissibility Review Office, CBP produced an additional three-page record in May 2023.  Id. ¶ 8.  Only the response from the Admissibility Review Office remains at issue.  See Joint Status Report [ECF No. 15] at 1.

The three-page record from the Admissibility Review Office is a printout from CBP's internal system (known as TECS) pertaining to Kayll.  As relevant here, the document includes a remark that "the Admissibility Review Office disapproved a [INA §] 212(d)(3)(A)(i) waiver for the subject.  Discretion was not warranted at this time.  See waiver link on CCDI NIV page."  Ex. to Pl.'s Cross-Mot. for Summ. J. [ECF No. 19-2] (FOIA return) at 1.[2]  The agency did not produce any further explanation of why "[d]iscretion was not warranted at th[at] time."

The issue at this juncture is whether CBP must produce the record available at the "waiver link on CCDI NIV page."  "CCDI NIV" refers to the Consolidated Consular Database Non-Immigrant Visa System, a State Department database containing documents relating to visa applications.  See Stein Decl. ¶¶ 3–4 (explaining that the Consular Consolidated Database is a State Department "data warehouse that stores current and archived data from all the [Bureau of Consular Affairs] databases at U.S. embassies and consulates around the world"); Rasinski Decl. ¶¶ 7–9.  A State Department consular officer seeking CBP approval for an inadmissibility waiver begins by creating a form in the database's Admissibility Review Information System.  Stein Decl. ¶ 4.  The form includes the applicant's biographical information and the consular officer's justification for recommending a waiver.  Id.  The consular officer then refers the form to CBP's Admissibility Review Office through the Admissibility Review Information Service.  Id.  A CBP

---

[2] According to CBP, "through an inadvertent omission, [this] record was not created at the time of the waiver decision" but has "since been created to correct this oversight."  Decl. of Amanda Rasinski [ECF No. 16-2] ("Rasinski Decl.") ¶ 15.

3

officer logs into the Consular Consolidated Database and enters his or her "approval or denial, and the grounds for doing so" into the form.  Rasinski Decl. ¶ 6.

CBP claims that this form, which includes the agency's decision, is not a CBP "agency record" under FOIA but is instead a State Department record.  See Defs.' Mot. for Summ. J. & Mem. in Supp. Thereof [ECF No. 16] ("Defs.' Mot.") at 1–2.[3]  Kayll has filed a cross-motion for summary judgment claiming that this form is an "agency record" of CBP that must be produced under FOIA.  See Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. & Resp. to Defs.' Mot. [ECF No. 20] ("Pl.'s Cross-Mot. & Opp'n") at 1–4.  Kayll also urges the Court to deny CBP's summary judgment motion because defendants have excerpted from, but not produced, the memorandum of agreement concerning information-sharing between the State Department and DHS.  Id. at 9–10.  The motions are fully briefed and ripe for decision.

## Legal Standard

"In enacting the FOIA . . . , Congress sought to open agency action to the light of public scrutiny."  U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 (1989) (cleaned up).  Accordingly, "[i]t is the agency's burden to prove that it has complied with its obligations under FOIA."  Democracy Forward Found. v. Ctrs. for Medicare & Medicaid Servs., Civ. A. No. 18-635 (JDB), 2019 WL 6344935, at *1 (D.D.C. Nov. 27, 2019).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

---

[3] Earlier in this litigation, CBP advised Kayll's counsel that "the information [Kayll is] seeking for this portion of the request is under the purview of the Department of State, not CBP."  Letter from Patrick Howard, Branch Chief, CBP, FOIA Div. to Carl W. Hampe [ECF No. 23-2].  There is no evidence that she has filed a corresponding FOIA request with the State Department.

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is warranted when the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a FOIA case, the Court may award summary judgment solely on the basis of information provided in [agency] affidavits or declarations when the affidavits or declarations are 'relatively detailed and non-conclusory.'" Defs. of Wildlife, 623 F. Supp. 2d at 87 (quoting Safecard Servs., Inc. v. Secs. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Such documents are accorded a presumption of good faith, which can be rebutted where the requestor "come[s] forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. U.S. Dep't of Just., 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (internal quotation marks omitted).

## Analysis

Under FOIA, district courts may "enjoin the agency from withholding agency records and . . . order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). FOIA does not define "agency records," but courts have interpreted the term as extending to "those documents that an agency both (1) creates or obtains, and (2) controls at the time the FOIA request was made.'" Cause of Action Inst. v. Off. of Mgmt. & Budget, 10 F.4th 849, 855 (D.C. Cir. 2021) (cleaned up) (quoting Jud. Watch, Inc. v. U.S. Secret Serv. ("Judicial Watch II"), 726 F.3d 208, 216 (D.C. Cir. 2013)). "[T]he burden is on the agency to demonstrate, not the requestor to disprove, that the materials sought are not 'agency records . . . .'" Id. at 854 (quoting Tax Analysts, 492 U.S. at 142 n.3).

As a preliminary matter, the Court notes that the "agency records" test is somewhat inapposite here. Because CBP seems to lack actual or constructive possession of the document at

5

issue, the case raises the question whether CBP can fairly be said to have "withheld" a record at all. The most analogous precedent may be Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136 (1980), where the Supreme Court concluded that an agency did not "withhold" agency records that were "removed from the possession of the agency prior to the filing of the FOIA request." Id. at 150; see also Tax Analysts, 492 U.S. at 148 n.9 ("Although a control inquiry for 'withheld' replicates part of the test for 'agency records,' the FOIA's structure and legislative history make clear that agency control over requested materials is a 'prerequisite to triggering any duties under the FOIA.'" (quoting Kissinger, 445 U.S. at 151)). And, as discussed further below, other "agency records" cases largely take agency possession (whether actual or constructive) of the documents as prerequisite, with the "control" aspect of the inquiry serving to further restrict disclosure of documents within an agency's possession rather than to expand disclosure requirements to documents outside an agency's possession.

However, because the parties have briefed this as an "agency records" case, the Court will proceed using the parties' proffered framework despite its ill-fitting application to the facts of this case. The Court will ultimately conclude that CBP has met its burden of proving that the document at issue is not an "agency record" of CBP.

## I. Creation

The parties first dispute whether CBP "created" the document that includes its rationale for denying the inadmissibility waiver request.[4] In its summary judgment motion, CBP did not address the issue of creation. But after Kayll presumed the issue was conceded, Pl.'s Cross-Mot. & Opp'n at 9, CBP asserted that the "State Department created the record, and CBP contributed to it with input in a few fields," Defs.' Reply in Supp. of Mot. for Summ. J. & Opp'n to Pl.'s Cross

---

[4] Neither party argues that CBP "obtained" the record.

Mot. for Summ. J. [ECF No. 23] ("Defs.' Reply & Opp'n") at 3 & n.2.  CBP submitted a declaration from Amanda Rasinski, a Branch Chief in CBP's Admissibility Review Office, detailing the process:

> [Department of State] creates the document related to a traveler's waiver, which is then referred to CBP in [the State Department's] Consular Consolidated Database (CCD), Admissibility Review Information System (ARIS).  Once referred, CBP, through the [Admissibility Review Office], will input information into certain fields in the system to aid [the State Department] in making its determination of whether to issue the visa.

Suppl. Decl. of Amanda Rasinski [ECF No. 23-1] ("Suppl. Rasinski Decl.") ¶ 5.

Kayll argues that the declaration does not suffice to carry CBP's burden to show it did not create the document.  She claims that CBP is "tr[ying] to downplay [its] role" as the agency with an independent, statutory duty to adjudicate inadmissibility waivers and "transmit that determination to the State Department."  Pl.'s Reply in Supp. of Cross-Mot. for Summ. J. [ECF No. 24] ("Pl.'s Reply") at 11–12; see 8 U.S.C. § 1182(d)(3) (conferring responsibility on DHS to approve or deny inadmissibility waivers upon recommendation of a consular officer); 40 C.F.R. § 40.301 (describing process whereby the State Department refers visa waiver request to DHS).

Neither party has pointed the Court to any case law directly addressing the issue of creation-by-contribution. The Court's own review suggests that disputes as to whether an agency "created" a record have arisen in two largely inapposite circumstances.  First, when "external entities . . . have 'acted on behalf of [the agency],'" courts look to whether the agency exercised "extensive supervision and control" over the third-party.  Cause of Action Inst. v. Nat'l Oceanic & Atmospheric Admin. ("NOAA"), Civ. A. No. 19-1927 (TSC), 2023 WL 3619345, at *4 (D.D.C. May 24, 2023) (alteration in original) (quoting Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 515 (D.C. Cir. 1996)).  Second, when records are produced by agency employees in a personal capacity, courts look to the "creation, maintenance and use of the documents" to determine if the records are "attribut[able] to the agency."  Bureau of Nat'l Affs., Inc. v. U.S. Dep't

7

of Just., 742 F.2d 1484, 1494–95 (D.C. Cir. 1984).  Neither line of case law directly applies, since CBP's contribution was made by agency officials in their official capacity.[5]  The Court considers this a close question.

On the one hand, what CBP "contributed" to the form was the reasoning for its statutorily mandated adjudication.  Disclosure of the document would, therefore, "open[] agency action to the light of public scrutiny" and help the public generally, and Kayll specifically, learn about the agency's decision-making.  Jud. Watch, Inc. v. Fed. Hous. Fin. Agency ("Judicial Watch I"), 646 F.3d 924, 927 (D.C. Cir. 2011) (internal quotation marks omitted).  Moreover, CBP's contribution is a written response composed by agency officials.  Were this decision contained in a separate document, CBP would have likely created an agency record.  Further, as a general matter, "[t]he focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  Accordingly, when the D.C. Circuit has considered how the contribution of Congress (which is not subject to FOIA) or an employee in a personal capacity has affected creation of an "agency record," the D.C. Circuit has asked whether the agency's information can be segregated from the information provided by the non-covered entity or individual.  See United We Stand Am. v. I.R.S., 359 F.3d 595, 601 (D.C. Cir. 2004) (concluding documents could only be withheld to the extent they would disclose a congressional request); Bureau of Nat'l Affs., 742 F.2d at 1496 (holding that the inclusion of personal information in documents did not preclude them from being "agency records" where the "personal information can be redacted").  At least to the extent that the information CBP

---

[5] The D.C. Circuit sidestepped the "ambiguous" question of creation-by-contribution in Judicial Watch II when considering who created White House visitor records (as between the White House employee who requested access, the visitor who swiped his pass, or the Secret Service who may add background check information).  726 F.3d at 217.

contributed can be segregated from the information the State Department contributed, there is support for concluding that CBP created the record here.

On the other hand, CBP did not "create" a record in the ordinary sense. Beyond the brief remark in TECS, CBP did not draft its own document memorializing the reasons for denying the inadmissibility waiver request. The document at issue here was initially created by the State Department, and it includes sensitive information from the consular officer about why he or she believed a waiver was warranted. CBP input an explanation into that document, but it did not create any separate record of the rationale for its decision. Moreover, CBP's input is likely closely related to, and perhaps even logically intertwined with, the request and justification of the State Department.

The Court is concerned that finding that CBP created the record could have wide-ranging consequences for documents produced as a result of inter-agency cooperation. Indeed, it is difficult to distinguish CBP's contribution to the record here from the contribution an agency might make by phone or email if it was consulted on another agency's decision. Wary of these implications, and in light of the parties' shallow briefing of this issue, the Court will assume without deciding that CBP has created a record and proceed to the issue of control, which is decisive in any event.

## II. Control

The D.C. Circuit has identified four factors relevant to whether an agency has "control" over a document:

> (1) the intent of the document's creator to retain or relinquish control over the records;
> (2) the ability of the agency to use and dispose of the record as it sees fit;
> (3) the extent to which agency personnel have read or relied upon the document; and
> (4) the degree to which the document was integrated into the agency's record system or files.

Cause of Action Inst., 10 F.4th at 855 (quoting Burka, 87 F.3d at 515). A court must apply the factors "in light of the 'totality of the circumstances,'" id. (quoting Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006)), mindful that the "burden is on the agency to demonstrate . . . that the materials sought are not 'agency records,'" Tax Analysts, 492 U.S. at 142 n.3.

### A. Intent of the Document's Creator to Retain or Relinquish Control

CBP's submissions show that the agency intended to relinquish control over the disputed record to the State Department. To begin, CBP has chosen to record its decision within a State Department database. Rasinski Decl. ¶¶ 5–6. CBP does not even make a copy within a CBP system beyond a brief remark "not[ing] the granting or denial of a waiver" and pointing the officer to the Consular Consolidated Database. Id. ¶¶ 12–13. Indeed, in Kayll's case, CBP seemingly forgot to make any note of its decision at all until she filed a FOIA request. Id. ¶ 15.

CBP's intent to relinquish control is further supported by the agreement it has entered with the State Department, which gives the State Department control over how the document is used in the future. Under this agreement, CBP may not disclose or otherwise disseminate the document. Rasinski Decl. ¶ 10. Further, the agreement provides that the State Department's retention policies determine whether and when the document can be deleted. Stein Decl. ¶ 6. Indeed, Kayll's contention that CBP "hid[] the results of its decisionmaking within another agency's files," Pl.'s Cross-Mot. & Opp'n at 1, nearly concedes that CBP has made an intentional decision to place its record of the inadmissibility waiver in the State Department's—not CBP's—files.[6]

---

[6] The Court rejects Kayll's argument that CBP's motion for summary judgment must be denied due to the agency's failure to produce "an apparently secret Memorandum of Agreement ('MOA') between the agencies for its positions here." Pl.'s Cross-Mot. & Opp'n at 9. The agency's declarations are sufficiently detailed and non-conclusory to support an award of summary judgment in this case. Kayll has not given the Court any substantive reason to doubt CBP's portrayal of the memorandum agreement, or to undermine the "presumption of good faith" that this Court accords the agency's declarations. Span, 696 F. Supp. 2d at 119.

That CBP retains an ability to access the document and even points its officers to it through TECS does not create a genuine dispute as to whether CBP intended to relinquish control. Where the agency's intent is apparent, a document's creator may retain access to, or copies of, records while still demonstrating an intent to relinquish control. See Judicial Watch II, 726 F.3d 218 (concluding that the Secret Service did not intend to retain control over White House visitor records when it entered an agreement with the White House to transfer the records on a regular basis, notwithstanding the fact that the Secret Service sometimes retained copies of those records); Judicial Watch I, 646 F.3d at 927 (holding that document creators "intentionally relinquished control" over their records when they agreed to conservatorship by the Federal Housing Finance Agency, even though they seemingly retained access to the documents).

### B. Ability of the Agency to Use and Dispose of the Record

The second factor weighs in favor of CBP as well, though less strongly than the first. On the one hand, CBP and DHS officials are authorized to "engage in routine use of visa records maintained in the [Consular Consolidated Database] 'for uses within (DHS's) statutory mission, including to process, approve or deny visa petitions and waivers.'" Stein Decl. ¶ 5. This suggests an ability to continue using the documents and some degree of control. On the other hand, the agency's declarations clearly indicate that CBP's ability to use and dispose of the documents is circumscribed. Indeed, CBP officers must obtain the State Department's consent before "disclosing, reproducing, transmitting, or copying for disclosure" the record. Id. ¶ 5. And the State Department ultimately controls the retention policies governing those documents, including the schedule on which they are deleted. Id. ¶ 6.

CBP's ability to continue accessing the document is less relevant to control than the State Department's authority to decide how that document is disclosed or deleted in the future because an agency may remain able to access documents without having control over them. CBP's ability

11

to review consular records within the Consolidated Consular Database does not give rise to any strong inference that CBP controls them. In Judicial Watch II, for example, the D.C. Circuit expressed skepticism about the district court's conclusion that the Secret Service could "use and dispose of [the records] as it sees fit" when the Secret Service agreed to transfer the records to the White House within 60 days, despite the fact that the Secret Service could use the White House visitor records for the purpose of performing background checks and verifying visitor admissibility. 726 F.3d at 218–19 (quotation marks omitted). Similarly here, the "restrictions on [CBP's] ability to use and dispose of," id. at 218, the inadmissibility waiver record suggests that CBP lacks control over the document.

### C. Extent to Which Agency Personnel Used the Document

The third factor of the test weighs in favor of Kayll, however. This factor has alternately been characterized as "actual use" or as whether "agency personnel have read or relied upon the document." See Cause of Action Inst., 10 F.4th at 857 (quoting Burka, 87 F.3d at 515). The D.C. Circuit has suggested that both the agency's creation of a document and the subsequent reference to or consultation of that document are relevant to the "use" factor. See Judicial Watch I, 646 F.3d at 928 ("[W]here an agency has neither created nor referenced a document in the 'conduct of its official duties,' the agency has not exercised the degree of control required to subject the document to disclosure under FOIA." (quoting Tax Analysts, 492 U.S. at 145)); Bureau of Nat'l Affs., 742 F.2d at 1491 (considering "the extent to which the document is used to conduct agency business").

Here, the record at issue memorializes the reasons for CBP's denial of the inadmissibility waiver and was used to transmit that information to the State Department. Even if CBP never again consulted or relied upon the document, it employed the document to communicate its decision and hence to conduct its business. Moreover, disclosure of the document would "further FOIA's purpose of 'open[ing] agency action to the light of public scrutiny.'" Judicial Watch I,

12

646 F.3d at 927 (alteration in original) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976)).

However, the agency's subsequent reliance on the document is slightly more equivocal. If the State Department seeks a second waiver of inadmissibility, a CBP adjudicator "may . . . review prior approvals or denials [of CBP inadmissibility waivers] within [the Consular Consolidated Database] to obtain a full application picture." Suppl. Rasinski Decl. ¶ 7. And indeed, CBP has a practice of placing a note in its own TECS system referring the user to the full document contained in the Consular Consolidated Database, suggesting it may use the document again. Rasinski Decl. ¶ 13. At the same time, CBP "has not received any subsequent waiver referral from [the State Department] for the plaintiff," Suppl. Rasinski Decl. ¶ 8, and the Court can infer that Kayll's specific record has not been reviewed except as part of this FOIA litigation. But because Kayll suggests she will seek a waiver again, see Kayll Decl. ¶ 7; Pl.'s Reply at 12–13, it is more than "possibl[e]" that the agency will read or rely on the record at issue in this case. See Cause of Action Inst, 10 F.4th at 857; see Defs.' Reply & Opp'n at 4–6.

Because CBP has used the document to convey its decision to the State Department, and there is more than a possibility that it will use the document again while reviewing a further request from Kayll, the Court finds that the "use" factor weighs in plaintiff's favor.

### D. Degree of Integration Into the Agency's Record System or Files

The final factor in the control analysis—whether the document was integrated into CBP's record system or files—firmly weighs in favor of the agency. The record Kayll seeks is housed in the Consular Consolidated Database, a system controlled, operated, and primarily populated by data from the State Department. See Stein Decl. ¶¶ 1–3. The fact that CBP makes a brief mark in its own TECS system noting its decision and the existence of a corresponding explanation in the State Department system does not "integrate" the document into CBP's systems. Judicial Watch

13

II, 726 F.3d at 220 (weighing "the degree to which [documents] were or are integrated into the [agency's] overall record system"). Since CBP does not maintain even a copy of the record in its own files, Rasinski Decl. ¶ 12, the record is not so integrated into the agency's record system as to suggest control.

\* \* \*

At this stage in the analysis, the Court has assumed that CBP "created" the records Kayll seeks. When it comes to the issue of "control," the result is not altogether clear: two of the four factors weigh strongly in favor of the agency, one weighs somewhat in favor of the agency, and one weighs in favor of Kayll. Broadly speaking, the agency's lack of possession points in one direction; the agency's use points the other way.

The D.C. Circuit has observed that "where a document is created by one agency and transferred to a second agency, control or possession is the critical analysis" to determine whether the document is an "agency record." Bureau of Nat'l Affs., 742 F.2d at 1490. This makes sense: it would be counterintuitive to say that an agency "controls" a record simply because it uses the document. We would not say that a library patron "controls" a book just because she reads it or cites it in a report. Rather, we would look for evidence that she also owns the book or has the authority to lend it out or rip up the pages. Indeed, the Court is not aware of cases holding that "use" alone can overcome evidence that the agency lacks actual or constructive possession of a document.[7]

---

[7] The Court is not using the term constructive possession in a technical sense, but rather to point to the element of control that turns on an agency's ability to control or take possession of records in the hands of a third-party. For example, in Burka the D.C. Circuit concluded an agency was in "constructive control" of tapes in the physical possession of a government contractor when the agency "plan[ned] to take physical possession of [them] at the conclusion of the project" and "prohibited [the contractor] from making any independent disclosures [of them]." 87 F.3d at 515. Likewise, courts have considered an agency to be in control of documents in the personal possession of acting agency officials. See NOAA, 2023 WL 3619345, at *5 (concluding emails in personal accounts of regional council members were agency records); cf. Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y, 827 F.3d 145, 149–50 (D.C Cir. 2016) (concluding agency improperly withheld agency head's emails maintained in a private account). Similar circumstances are not presented here.

14

It is true, as the parties argue, that the D.C. Circuit has sometimes referred to "use" as the decisive factor. But a review of the case law reveals that the "use" factor is "decisive," Cause of Action, 10 F.4th at 857, only when there is already evidence that the agency possesses or could take possession of the records. Because "possession" or "ownership" do not alone suffice to show control, see Judicial Watch I, 646 F.3d at 927, "use" separates "agency records" from records an agency merely happens to possess. See, e.g., id. (considering "use" the decisive factor when FHFA obtained records via its position as the conservator of Fannie Mae and Freddie Mac); Bureau of Nat'l Affs., 742 F.2d at 1490 (focusing on the "use of the document" when determining if employees' quasi-personal records were also agency records); Cause of Action Inst. v. Nat'l Archives & Recs. Admin., 753 F.3d 210, 216 (D.C. Cir. 2014) (observing that documents "warehouse[d]" by the National Archives were not agency records, because Archives "does not use documents created in the three branches in any operational way"); cf. Kissinger, 445 U.S. at 157 ("We simply decline to hold that the physical location of the notes of telephone conversations renders them 'agency records.'"). But the "use" factor is not decisive when the agency lacks possession or does not exercise similar control over the record. See Forsham v. Harris, 445 U.S. 169, 185–87 (1980) (holding that records of federal grantees were not "agency records" even though the agency relied on reports based on this data, and the agency had a "right of access to the data, and a right if it so chooses to obtain permanent custody of the [grantees'] records").

In this case, the undisputed facts demonstrate that CBP lacks possession of the document, and the lack of possession points clearly to a lack of control. The record Kayll seeks is held only in a State Department system; CBP does not even have a copy in its own files. Moreover, once the decision is inputted, CBP is limited in what it can do with the record. CBP cannot share or delete the record without permission from the State Department. And the record is so integrated into the State Department's system that it is included in a document prepared by the State

15

Department.  Without some quantum of possession or similar control, CBP's use of the form to communicate its decision to the State Department and potential reliance on the rationale memorialized there to make future decisions does not make it an agency record.  While the possession and use factors are both relevant to determining which agency is in "control" of a document, CBP's lack of possession here is decisive.

One final consideration influences the Court's analysis.  If Kayll sought these same records from the State Department, her request would probably be denied.  The D.C. Circuit has long held that the confidentiality provision for "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States," 8 U.S.C. § 1202(f), qualifies as a nondisclosure statute under Exemption 3 of FOIA.  Medina-Hincapie v. Dep't of State, 700 F.2d 737, 740–43 (D.C. Cir. 1983).  That exemption "is not limited to information supplied by the visa applicant[;] it includes information revealing the thought-processes of those who rule on the application."  Id. at 744.  Courts have extended this exemption to documents created by other agencies but held and relied upon by the State Department in adjudicating a visa.  See, e.g., Spadaro v. U.S. Customs & Border Prot., 978 F.3d 34, 44 (2d Cir. 2020) (FBI documents reviewed by the State Department in the course of adjudicating a visa application were exempt from disclosure).

The Court is concerned that ordering disclosure here would amount to an end run around this confidentiality provision.  The document at issue was created in part by the State Department and in part by CBP, for the purpose of deciding whether the State Department could issue a visa.  Hence, it would likely be exempt if sought through a FOIA request to the State Department.  See Defs.' Reply & Opp'n at 9–12.  Cognizant of Congress's express determination that visa records of the State Department should be kept confidential, the Court is hesitant to conclude that the CBP's contribution to those records eradicates the exemption.  Cf. Judicial Watch II, 726 F.3d at

16

231 ( "Congress did not intend to authorize FOIA requesters to obtain indirectly from the Secret Service information that it had expressly barred requesters from obtaining directly from the President."); Democracy Forward Found v. U.S. Gen. Servs. Admin., 393 F. Supp. 3d 45, 56 (D.D.C. 2019) (refusing to order disclosure of Trump presidential transition team records held by the General Services Administration when such records would be exempt if sought from the Department of Justice).[8]

## Conclusion

For the reasons stated above, defendants' motion for summary judgment will be granted, and Kayll's cross-motion for summary judgment will be denied. A separate Order will issue consistent with this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: January 8, 2024

---

[8] Kayll accuses CBP of "hid[ing] the results of its decisionmaking within another agency's files" in a "blatant attempt to broaden a FOIA exemption statute that applies only to the State Department." Pl.'s Cross-Mot. & Opp'n at 1. She argues that FOIA does not "permit one agency to store its records in the files of another agency . . . when the first agency has been specifically tasked by Congress with generating the documents in question." Id. The Court rejects the argument.

To begin, Kayll's allegations of nefarious behavior and bad faith are not supported by any facts suggesting that CBP's process is anything other than inter-agency cooperation. Further, FOIA does not create a private right of action to reclaim agency records. As the Supreme Court has explained, FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." Kissinger, 445 U.S. at 969. Thus, FOIA does not create any private right to sue an agency for failing to "create or retain documents" or to "retrieve documents which have escaped its possession." Id.; see Folstad v. Bd. of Governors of Fed. Rsrv. Sys., No. 00-1056, 2000 WL 1648057, at *2 (6th Cir. 2000) (holding that legal requirement for an agency to maintain a document "do[es] not establish that the defendant actually has possession of the [document], which is a prerequisite for FOIA liability"); Piper v. U.S. Dep't of Just., 294 F. Supp. 2d 16, 22 (D.D.C. 2003) ("Even where the Government was obligated to retain a document and failed to do so, that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse." (internal quotation marks omitted)); Energy Pol'y Advocs. v. U.S. Dep't of Interior, Civ. A. No. 21-1411 (JDB), 2023 WL 2585761, at *4 (D.D.C. Mar. 21, 2023) (concluding that the agency did not "create[] an impermissible 'loophole to FOIA'" by failing to save Zoom chats). While the Court appreciates Kayll's desire to better understand the basis for CBP's decision, she may not use FOIA to challenge CBP's record retention policies.